### Lawson v. Lawson.

October 10, 1950.

James W. Turner, Judge.

C. F. See, Jr., and Stewart & Woods for appellant.

E. E. Adams, Kit C. Elswick for appellee.

Judge Knight—Affirming.

Lark Lawson died testate a resident of Lawrence county in April 1948, and his will was admitted to probate in the county court on June 19, 1948. On appeal from the county court to the circuit court of Lawrence county and a trial before a jury on the issues, the jury found the will of deceased, dated June 6, 1934, to be his last will and testament and a judgment was entered sustaining the order of the county court in probating said will. Appellant appeals from that judgment.

In his will deceased devised all his property to his wife, Amanda Lawson, appellee herein. Deceased and his wife had four children, appellant W. P. Lawson, an only son, who alone is contesting the will, and three daughters, not parties hereto. The size of the estate is not shown in the record.

Neither in the county nor the circuit court was there any claim of mental incapacity or undue influence and the sole ground of contest in the lower court and on the appeal here is that the will was not executed in accordance with KRS 394.040. That section of the statutes requires that if the will is not wholly written by the testator, his subscription of his name thereto shall be made or the will acknowledged by him in the presence of at least two credible witnesses who shall subscribe their names in the presence of the testator. It is the contention of appellant that the judgment should be reversed because deceased did not sign or acknowledge the purported will in the presence of either witness; that he did not sign it prior to the time they signed it and he did not thereafter sign or acknowledge it in their presence; that he did not inform either witness that the paper was his will nor request either of them to witness the instrument as his will.

The will, filed in the record as an exhibit, is before us and on its face is in all respects regular. The will is typewritten, is signed by the testator and by two witnesses, M. C. Miller and L. R. Muncy, who certify above their signatures that it was signed and acknowledged by testator on June 6, 1934, in their presence and witnessed by them at his request. The testimony of the propounder is that the will was written by R. C. McClure, then a lawyer in Louisa but now deceased. When it was ready for execution he called in the two witnesses, each of

whom had a place of business adjacent to or near the McClure law office. Mr. Miller, one of the witnesses, testified that he was well acquainted with the testator; that on the day in question he was called into Mr. McClure's office and when he arrived he found there the lawyer, Mr. McClure, the testator, Mr. Lawson, and the other witness, Mr. Muncy; that he was handed the will and read it; that it was signed by Mr. Lawson, then by himself, then by the other witness, Mr. Muncy. He was positive in his testimony that the will was signed in his presence by the testator.

The testimony of the other witness, Mr. Muncy, now residing in Pennsylvania, was taken by deposition and was not so positive. He testified that Mr. McClure asked him to come to his office to witness a will; that upon arriving there he was introduced to Mr. Lawson and was told by Mr. McClure that he wanted him to witness a will. He testified that he signed the will in Mr. Lawson's presence and when shown the original will he said that was his signature as a witness. His memory was not clear on all details as to who signed first, just who was present, whether there were other names signed when he signed, etc., since it had been fourteen years since he witnessed the will and he had been out of contact with all parties.

To overcome the testimony of these two apparently disinterested witnesses, appellant relies on his own testimony, a highly interested party. He admits that he was not present at the time of the supposed execution of the will but claims he was outside the McClure office standing at the door. The substance of his testimony is that he was talking to his father and a Mr. Hewlett on the outside; that his father was not in the office when the witnesses, Miller and Muncy, were in there; that when they left, the signature of his father was not on the will and was not placed there until they had left. Mr. Hewlett testified that on one occasion, the date of which he could not remember, he was in conversation with Mark Lawson on the street in front of Mr. McClure's office and during that conversation Mr. McClure came out and called Mr. Lawson into his office and his son, W. P. Lawson, appellant, went into the office with him. His testimony throws no light on the execution of the will. Appellant contends that the court erred in refusing to permit him to testify with refer-

ence to certain details concerning the execution of the will which he contended would have gone to show that his father did not sign or acknowledge the will in the presence of the witnesses. We have examined this testimony which was heard by the court out of the presence of the jury and which is in the record. While we think this testimony was not incompetent, the failure to admit it was not prejudicial. The purpose of the excluded testimony was to show that the witnesses signed the will and later it was signed by the testator. The substance and full effect of the excluded testimony was placed before the jury when the court permitted the following question and answer to go to the jury: "Q. Your father's signature was not placed on the purported will until after Mr. Muncy and Mr. Miller left the room? A. It was not."

As we see it the question in this case is purely a factual one. If the will, which on its face bears every evidence of regularity, was executed as the propounder's witnesses say it was, the will was executed in accordance with the provisions of the statute. If, instead, as appellant testifies, the lawyer had the witnesses come in and sign the will and then called in the testator and had him sign after they were gone, a highly improbable story, it was not executed in accordance with the statute. It was the province of the jury to weigh this conflicting testimony and decide the issue and its verdict would not be disturbed even if we entertained some doubt of the correctness of its decision, which we do not after a careful reading of all the evidence. If a natural will such as this one, in which the testator left his property to his wife and with every earmark of regularity, can be overthrown on the testimony of a disgruntled heir for alleged irregularities in its execution, fourteen years later when the witnesses may be dead or inaccessible, no one could safely make a will with any hope that his wishes would be carried out.

The judgment is affirmed.